CARRIE HAYWARD, PLAINTIFF AND DEFENDANT IN ERROR, v. NORTH JERSEY STREET RAILWAY COMPANY, DEFENDANT AND PLAINTIFF IN ERROR.

Argued November 27, 1906—Decided March 4, 1907.

1. Motion for nonsuit and for direction of verdict for defendant is in effect a demurrer to so much of the whole testimony as is favorable to plaintiff, admitting its verity in point of fact for the purpose of denying its sufficiency in point of law.

2. Plaintiff's cross-examination, tending to show lack of ordinary caution, was contradictory to testimony on direct and to testimony of other of plaintiff's witnesses. *Held*, that on motions to nonsuit and to direct a verdict for defendant, the trial judge could not ignore testimony of other witnesses for plaintiff in favor of plaintiff's testimony on cross-examination, nor pass upon conflicting claims to credibility.

3. In an action against a street railway company for injuries received by a foot passenger, struck by a car of the defendant while crossing a public street, it was established that when and where the accident occurred there was a sign, placed over the tracks by the defendant corporation, requiring cars to "Run Slow!" *Held*, that this requirement, adopted by the defendant corporation previous to the accident, for the guidance of its servants in matters relating to the safety of the public, and made public, created a duty as to such persons as would be likely to be injured by a failure to observe the precautions prescribed. Proof of a violation of such requirement by the motorman, directly resulting in injury to the plaintiff, is evidence, although not conclusive, from which the jury would be warranted in finding the motorman negligent, and the defendant therefore liable.

On error to the Hudson Circuit Court.

For the plaintiff in error, *Bedle, Edwards & Holmes.*

For the defendant in error, *Warren Dixon.*

The opinion of the court was delivered by

DILL, J. The plaintiff below, while crossing Newark avenue, Jersey City, was struck by a trolley car of the defendant company, receiving injuries, for which she recovered damages in the Hudson Circuit Court.

The writ of error in this case presents the question as to whether the circuit judge erred in refusing to nonsuit the plaintiff, and in refusing to direct a verdict for the defendant upon the ground that contributory negligence had been shown upon the part of the plaintiff.

The case was submitted to the jury, and they found for the plaintiff.

It is not for this court to consider what its verdict would be on the printed case, but whether, on the evidence, the circuit judge could have taken the case from the jury.

The undisputed facts were that the plaintiff below, a young lady, while crossing on foot from the southerly to the northerly side of Newark avenue, in Jersey City, at about ten o'clock at night, was struck by a car of the defendant company. Her leg was broken and she received other injuries.

In the immediate locality where the accident occurred there was a public trolley sign, suspended over the tracks by the defendant company, requiring cars to "Run Slow!"

Immediately preceding the accident a police patrol wagon was being driven in a westerly direction, up Newark avenue, on the northerly side of the street, at a rapid pace, the horses galloping, the gong sounding, and otherwise creating disturbance and confusion in the street.

The plaintiff waited for it to pass, and immediately thereafter was struck by the left-hand or northerly side of the fender of an eastbound car on the southerly track. Her attention was attracted by the patrol wagon, to the exclusion of other objects in the street. She did not see the car approaching, and there is no evidence that she looked to ascertain whether a car was approaching.

The disputed question was as to where she waited for the patrol wagon to pass. The evidence of the plaintiff on the direct, and that of other witnesses in her behalf, was that she was in the act of crossing, had passed across, or nearly across, the southerly or eastbound track, and at that point, hearing the patrol wagon coming on the track in front of her, she stopped and waited for it to pass, and while thus waiting between the tracks was struck by the car.

The insistment of the defendant was that while the plaintiff was in a place of safety, on or near the sidewalk, and before she had crossed either of the tracks her attention was attracted by the oncoming patrol wagon, and that in such place of safety she waited, and after it passed started across the southerly track, without looking to see whether any car was approaching, and was thus struck by the oncoming car.

The defendant below, both on the motion for a nonsuit and for a direction of a verdict, relied upon the testimony of the plaintiff upon cross-examination, where she said:

"Q. Did you see this car at all?

"A. No, sir.

"Q. You weren't looking?

"A. I was looking at the patrol; that is what took my attention.

"Q. You heard it coming?

"A. Yes, sir.

"Q. You were about to cross the street?

"A. Yes, sir.

"Q. And waited until it got by?

"A. Yes, sir.

"Q. Then you crossed the street?

"A. Yes.

"Q. Hurriedly or slowly?

"A. Well, I was not hurrying to get out of the way of anything; I was going right across.

"Q. Looking straight ahead?

"A. Well, as I say, my attention was taken up by the patrol wagon.

"Q. You didn't hear anything else?

"A. I heard the clatter of the patrol bell.

"Q. That made quite a noise?

"A. Yes, sir.

"Q. You didn't look where you were going, except going across the street?

"A. Yes, sir."

This testimony, the plaintiff in error contends, disclosed a failure of the plaintiff below to exercise ordinary caution.

Assuming, for the purpose of this discussion, that this evidence was susceptible of the construction placed upon it by the plaintiff in error, and permitted no other legitimate inference, nevertheless, because such testimony thus construed was directly at variance with the testimony of the plaintiff below on her direct, and with the evidence of other witnesses called in her behalf, it could not avail the defendant upon its motion either for a nonsuit or for a direction of the verdict.

The trial judge could not ignore the testimony of other witnesses for the plaintiff in favor of that given by her on cross-examination, nor pass upon conflicting claims to credibility. The motion was in effect a demurrer to so much of the whole testimony as was favorable to the plaintiff, admitting its verity in point of fact for the purpose of denying its sufficiency in point of law. *Kaufman* v. *Bush,* 40 *Vroom* 645.

Therefore, in dealing with the question before us, we must assume that the plaintiff was in the act of crossing the street, had crossed the southerly or eastbound tracks, when she was held up by the patrol wagon coming on the track in front of her; that while thus waiting between the tracks, immediately after its passage, she was struck by the trolley car running at a high rate of speed and without warning signals.

Hence, although the plaintiff's attention was so wholly taken up with the passing of the patrol wagon that she did not see the eastbound car, and did not look for its approach, nevertheless there would be an issue for the jury. *Traction Company* v. *Scott,* 29 *Vroom* 682, 694; *Connelly* v. *Trenton Passenger Railway Co.,* 27 *Id.* 700, 704.

A legitimate inference would be that the plaintiff had begun to cross the highway before the trolley car had approached so near that it could not be stopped by the motorman and while it was sufficiently distant to have avoided striking the plaintiff but for either the rate of speed at which the car was progressing or from inattention on the part of the motorman.

In corroboration of the testimony that the car came down

upon the plaintiff at a dangerous rate of speed, there was evidence that after the plaintiff was struck she was dragged by the trolley car some twenty or twenty-five feet, and that the car ran by the place where the accident occurred some seventy-five or one hundred feet before it stopped. · From this the jury might find that the car was running at an unreasonable rate of speed prior to the effort made by the motorman to stop it. *Zolpher* v. *Camden and Suburban Railway Co.*, 40 *Vroom* 417, 418.

Under the evidence that no warning signal of approach was given by the trolley car, it was for the jury to say whether the omission of such signal was a proximate cause of the accident. *Consolidated Traction Co.* v. *Chenowith,* 32 *Vroom* 554, 559.

Whether at the point where the plaintiff was crossing the street and was injured there was a regular, recognized street crossing the evidence was not clear on the plaintiff's case, and was on the whole case conflicting. This question, also, was properly left to be determined by the jury.

Furthermore, we have the fact, and undisputed, that when and where the accident occurred there was, and for some time previously had been, over the tracks a public sign of the defendant company requiring the cars to "Run Slow !"

This requirement, adopted and made public by the defendant corporation previous to the accident, for the guidance of its servants in matters relating to the safety of the public, created a duty of obedience as between the employes and the company, and disobedience of the order by the servant is negligence as between the employer and the servant. If such disobedience injuriously affects a third person, it is not to be assumed, in favor of the master, that the negligence was immaterial to the injured person, and that his rights were not affected by it. · Rather ought it to be held, as an implication, that there was a breach of duty towards the party injured, as well as towards the master who prescribed the conduct that he thought was necessary or desirable for protection in such cases.

The rule is thus formulated, the principle ably discussed and the authorities marshaled by Chief Justice Knowlton, in *Stevens* v. *Boston Elevated Railway Co., 184 Mass.* 476.

As against the company defendant, the methods which it has adopted for the protection of others are some evidence of what the company deems necessary or proper to insure their safety.

*Dublin, W. & W. Ry. Co.* v. *Slattery (H. L.)* is in point. Slattery was killed by an express train passing through a way station, and "the only negligence alleged against the appellants [the railway company] was that the express train from Dublin did not whistle before or as it passed through the station, and it was suggested that had it whistled it would have acted as a caution to Slattery, and he would not have attempted to cross the line." There was no special statutory duty imposed on the company of whistling at a station (at *p.* 1172), but the rule of the railway required express trains to whistle passing every station. As to whether the whistle was sounded, the evidence was conflicting. The Lord Chancellor (Lord Cairns) said: "Although it would, as it seems to me, be difficult to lay down an abstract rule as to the necessity of whistling, it may be taken that the orders given to the engine-drivers showed that the appellants considered whistling, under the circumstances, to be a reasonable and proper precaution, and it might have been, and I think it was, right to tell the jurors that if they found this precaution neglected on this occasion they might consider it to be evidence of negligence on the part of the appellants." *Dublin, W. & W. Ry. Co.* v. *Slattery, 3 App. Cas.* 1155, 1164.

In the case at bar, the requirement that cars should be run slowly at this point created a duty of obedience on the part of the defendant's employes not only to the company, but as well, on the part of both the corporation and its employes, to such persons as would be likely to be injured by a failure to observe the precautions thus prescribed.

The plaintiff, being familiar with this requirement thus made public, had therefore the right to assume that servants

of the company would comply with its terms, and that at this point cars would run slowly.

It therefore follows that proof of a violation of such requirement, adopted and made public previous to the accident resulting in injury to the plaintiff, was evidence, although not conclusive, from which the jury would be warranted in finding that the motorman was negligent and the defendant therefore liable.

All of these questions of fact the circuit judge in his charge fully and fairly left to the jury, and in terms of which the plaintiff in error cannot, and does not, complain.

When the request to nonsuit was made it was obviously impracticable for the trial judge to say what facts had been established, and when the motion for the direction of a verdict was made, the facts on the whole case as presented were impossible of reconciliation. Therefore, the real facts could only be determined by a jury settling the credit to be given to witnesses, weighing and comparing their varying testimony.

Under such circumstances it would have been error to have withdrawn the case from the jury. *Newark Passenger Railroad Co.* v. *Block,* 26 *Vroom* 605, 608.

The judgment of the Circuit Court, therefore, is affirmed.

*For affirmance*—THE CHANCELLOR, GARRISON, FORT, HENDRICKSON, SWAYZE, REED, TRENCHARD, BOGERT, VREDENBURGH, VROOM, GREEN, DILL, J.J. 12.

*For reversal*—THE CHIEF JUSTICE, GARRETSON, J. 2.