20856. SEABOARD AIR-LINE RAILWAY COMPANY *v.* BENTON.

DECIDED JUNE 15, 1931.   REHEARING DENIED JULY 20, 1931.

*R. H. Kimball, John B. Gamble,* for plaintiff in error.

*Shackelford & Shackelford, Harwell, Fairman & Barrell, Richard B. Russell Jr.,* contra.

JENKINS, P. J.   This was a suit for damages on account of the death of the plaintiff's husband in a collision at a public crossing between an automobile-truck which he was driving and a passenger-train of the defendant.   The court overruled a general and special demurrer to the petition as amended.   The trial resulted in a verdict in favor of the plaintiff, and the defendant excepts to the order overruling its motion for a new trial, based upon the usual general grounds and numerous special grounds.   Error is also assigned upon exceptions pendente lite taken to the order overruling the demurrer.   The petition as amended alleged in substance that the decedent drove upon the tracks of the defendant company without being aware of the approach of the train, and that his truck was struck by the oncoming passenger-train of the defendant, traveling at a speed of sixty miles an hour, and approaching the

public crossing in a populous community without the whistle being blown, and without the bell being rung, without the speed of the train being slackened, and without the engineer and fireman keeping a constant and vigilant lookout ahead, and while the fireman was engaged, in violation of the rules of the company, in firing the engine on approaching the station. It is charged that such acts constituted negligence, and were the proximate cause of the death of the decedent.

■ What constitutes negligence on the part of a defendant, what constitutes the proximate cause of an injury, and what amounts to a failure to exercise ordinary care on the part of a plaintiff are generally questions for a jury. *Farrar* v. *Farrar*, 41 *Ga. App.* 120 (152 S. E. 278), and cases cited. Even had the petition disclosed, and the evidence established, that the decedent was driving the automobile in violation of the statutes regulating the use of motor-vehicles, that fact would not necessarily preclude any sort of recovery. *Louisville & Nashville R. Co.* v. *Stafford*, 146 *Ga.* 206, 209 (91 S. E. 26) ; *Central of Ga. Ry. Co.* v. *Larsen*, 19 *Ga. App.* 413 (91 S. E. 517).

■ The act approved August 19, 1918 (Ga. L. 1918, p. 212; Michie's Code, 1926, § 2677), regulating the operation of railroad-trains, by which the provisions of the Civil Code (1910), §§ 2675-2677, known as the "blow-post law," were repealed, imposed certain duties upon the employees of a railway company in approaching a public railroad-crossing, a failure to comply with which constitutes negligence per se. *Louisville & Nashville R. Co.* v. *Faust*, 30 *Ga. App.* 310 (2) (117 S. E. 761). The provisions of the act of 1918 are not affected by the decision of the Supreme Court of the United States in Seaboard Air-Line Ry. Co. *v.* Blackwell, 244 U. S. 310 (37 Sup. Ct. 640, L. R. A. 1917F, 1184), since the ruling there made affected only the constitutionality of the provision of the previous statute, repealed by the act of 1918, with reference to checking the speed of a train on its approach to a public crossing. *Davis* v. *Whitcomb*, 30 *Ga. App.* 497 (6) (118 S. E. 488).

■ Independently of the provisions of the statute regulating the operation of railroad-trains on approaching public crossings, there rests upon the railroad company a duty to exercise ordinary care, and a failure of the servants of a railroad company operating its

train to give any signal by bell, whistle, or otherwise, or to check the speed of the train on approaching a public crossing, might, in the opinion of the jury, constitute actual negligence, in the light of the surrounding facts and circumstances. *Southern Ry. Co.* v. *Slaton,* 41 *Ga. App.* 759 (4), 762 (154 S. E. 718); *Western & Atlantic Railroad* v. *Reed,* 35 *Ga. App.* 538, 540 (134 S. E. 134); 52 C. J. 175, 209, §§ 1769, 1810; Continental Improvement Co. *v.* Stead, 95 U. S. 161 (24 L. ed. 403).

■ In accordance with the foregoing rulings, the petition in the instant case stated a cause of action, and was not subject to the demurrers interposed.

■ "Under the constitutional amendment of 1916, defining the jurisdiction of the Supreme Court and the Court of Appeals of this State, the Court of Appeals has jurisdiction to decide questions of law that involve application, in a general sense, of unquestioned and unambiguous provisions of the constitution to a given state of facts, and that do not involve construction of some constitutional provision directly in question and doubtful either under its own terms or under the decisions of the Supreme Court of the United States, and that do not involve the constitutionality of any law of the State or of the United States or any treaty." *Gulf Paving Co.* v. *Atlanta,* 149 *Ga.* 114 (99 S. E. 374); *Daniel* v. *Claxton,* 35 *Ga. App.* 107 (132 S. E. 411). In the instant case the plea of the defendant sets forth, in substance, that to subject the defendant railway company to liability for damages on account of the alleged negligence in failing to check the speed of its train on approaching the crossing at which the homicide occurred, in view of the facts set forth by the plea as to the number of crossings on the line of the defendant's railway in the State of Georgia, and the time that would be consumed in checking the speed of the train at each of such crossings would amount to an unauthorized regulation of interstate commerce, in that it would impose an unreasonable burden thereon, thus violating the commerce clause of the Federal constitution. But since the defendant thus merely contends that to hold it liable under the facts would be violative of the Federal constitution as imposing an unreasonable burden on interstate commerce, and raises no question as to the constitutionality of any statute of the State of Georgia, this court is not deprived of jurisdiction to pass upon questions of actual negligence, growing out of a particular

state of facts, although involving in a general sense the application of unquestioned and unambiguous provisions of the constitution. *Southern Pacific Co.* v. *DiCristina,* 36 *Ga. App.* 433, 435 (137 S. E. 79).

In the absence of action by Congress authorizing the particular acts complained of as negligence, or prescribing the degree of care and diligence to be exercised by a railroad company in operating interstate trains at public crossings, assuming, without deciding, that Congress has such power, it can not be said that the general duty to exercise ordinary care, imposed by the law of the State upon its citizens generally, constitutes an unreasonable burden upon interstate commerce because persons engaged in interstate commerce incidentally come within the purview of such general laws. See, in this connection, U. S. *v.* Bevans, 3 Wheat. 336 (4 L. ed. 404); Sherlock *v.* Alling, 93 U. S. 99 (23 L. ed. 819).

The charge of the court submitting to the jury for determination all the questions of negligence raised by the petition was, therefore, not error.

■ The court did not abuse its discretion in declining to send the jury from the court-room while counsel for the plaintiff, in the course of his argument, read to the judge the act approved August 24, 1929 (Ga. L. 1929, p. 315), enacted after the date of the injury sued for, providing that "in all actions against railroad companies for damages done to persons or property, proof of injury inflicted by the running of locomotives or cars of such company shall be prima facie evidence of the want of reasonable skill and care on the part of the servants of the company in reference to such injury." See *Rutledge* v. *Hudson,* 80 *Ga.* 266 (4) (5 S. E. 93); *Slaughter* v. *Heath,* 127 *Ga.* 747 (8) (57 S. E. 69, 27 L. R. A. (N. S.) 1).

■ Movant contends that the court abused its discretion in refusing the motion of counsel for defendant to declare a mistrial because counsel for plaintiff presented in his argument to the court and in the presence of the jury the act of 1929, supra. This act was remedial in its nature (*Searcy* v. *Stubbs,* 12 *Ga.* 437 (2), 439), and for that reason could have application, in a proper case, to a cause of action arising prior to its enactment; but even were it to be assumed that such rule would be totally inapplicable in all cases where evidence combating the grounds of negligence alleged

by the plaintiff had been introduced on behalf of the defendant, this court would feel unauthorized to set the verdict and judgment aside on the theory that the judge abused his discretion in refusing to declare a mistrial merely because he had permitted counsel in his argument to the court to present in the presence of the jury his contention arising from that statute.

■ The court properly instructed the jury that the pleadings should be looked to in determining the issues between the parties; and the incorrect statement of the court, in stating the contentions made by the pleadings, that the petition alleged that the decedent, on the occasion of the homicide, stopped the automobile-truck in which he was riding, before going upon the crossing, in order to determine whether or not the right of way was clear, was not calculated to mislead the jury, since there was positive evidence on the plaintiff's behalf that such was the case, although the petition alleged merely that before entering the crossing the decedent and his brother "looked east and west up and down said railroad-tracks and saw and heard no train approaching."

■ Nor was the charge of the court erroneous as unduly stressing the contentions of the plaintiff. The judge instructed the jury that the pleadings would be out with them, and that the contentions of the parties were fully set forth therein, and that he had not undertaken to set forth the contentions in detail.

■ The court instructed the jury generally that the question of negligence was one for their determination, that they must find, from all the facts and circumstances, whether the decedent was at fault, or whether the defendant, through its servants and agents, was at fault; whether the death of the decedent was brought about by his own negligence or by the negligence of the defendant, or by the negligence of both; that if the decedent could have avoided his death by the exercise of ordinary care, or if he could have avoided any negligence of the defendant by the exercise of ordinary care, the plaintiff was not entitled to recover; but that if the decedent was killed by the negligence of the defendant, and he could not have avoided the defendant's negligence by the exercise of ordinary care, the plaintiff would be entitled to recover. This charge, reasonably construed, could not have been harmful to the defendant for the reason assigned, to wit, that it authorized a recovery on account of some negligence not set forth by the petition;

since there was nothing in the proof submitted which indicated that the defendant was guilty of any acts of negligence other than those charged in the petition.

The charge of the court that if the jury believed the decedent exercised ordinary care and diligence for his own safety, and the proximate cause of his death was on account of the failure of the railroad company to keep a constant and vigilant lookout in front of the train, and on account of the excessive rate of speed at which the train was traveling, and that the decedent could not have avoided his death by the exercise of ordinary care and diligence, a recovery would be authorized, was not subject to the criticism made that it deprived the jury of the privilege of determining the speed of the train as a question of fact; nor did it amount to an expression of opinion that the speed of the train was in fact excessive.

The charge of the court, "if you believe that the deceased, before driving upon the crossing, checked his truck and slackened his speed so that he wasn't going at a greater rate of speed than was safe and proper when he crossed the railroad-tracks on Jefferson street, and was exercising ordinary care and diligence, and that the proximate cause of the deceased's death was on account of the [negligence of] defendant's agents and employees in operating the train, or was negligence, in failing to give the proper signals and keep a constant and vigilant lookout ahead in order to avoid injury and damage to persons that might be on the railroad-crossing, and if you believe that was the proximate cause of the plaintiff's husband's death, why then the plaintiff would be entitled to recover," was authorized by the evidence, and was not erroneous for any reason assigned.

The charge set forth in the preceding paragraph, which was not in and of itself erroneous, was not error in that the judge failed to charge, upon his own motion and in connection therewith, the provisions of the act of 1910 (Ga. L. 1910, p. 96), restricting the speed of motor-vehicles on approaching "a bridge, dam, high embankment, sharp curve, descent or crossing of intersecting highways and railroad crossings" to six miles per hour, or the similar provision of the act of 1921 (Ga. L. 1921, p. 255), restricting the speed of motor-vehicles on approaching a bridge, etc., to ten miles per hour. It has been held that the provision of the act of 1910 referred to was repealed by necessary implication by the subsequent

act of 1927 (Ga. L. 1927, pp. 226, 236). *Sapp* v. *Elrod,* 41 *Ga. App.* 356, 358 (153 S. E. 73). The act of 1927 would seem necessarily to supersede both the act of 1910 and the act of 1921, since it is provided by section 12 of the act of 1927 that the operator of a motor-vehicle, "in rounding curves, shall reduce speed and shall keep his vehicle as far to the right on the highway as reasonably possible;" and that such operator shall "reduce speed at crossing or intersection of highways, on bridges, or sharp curves and steep descents, and when passing any animal being led on the highway." While section 12 of the act of 1927 imposing "restrictions as to traffic" does not specifically regulate the speed of motor-vehicles on approaching a railroad-crossing, the intention of the legislature that the act of 1927, when taken in connection with the act of 1925, should cover the whole subject-matter of the operation, of motor-vehicles on public highways is manifest, since the act of 1927 (Ga. L. 1925, p. 322; Michie's Code, 1926, § 2677(7-15)), requiring the designation, by the county authorities, of railroad-crossings outside of incorporated towns and cities as "safe" or "unsafe" crossings, and regulating the operation of motor-vehicles, at the crossings so designated and marked as required by that act, but further providing that a failure to observe its provisions shall not be considered negligence per se, and that the act shall not be given in charge in any civil case, deals with the only remaining provisions of the acts of 1910 and 1921, governing the operation of automobiles on public highways, not specifically covered by the act of 1927. It would therefore seem that the entire legislation embodied in the acts of 1910 and 1921 governing the operation of automobiles on public highways was covered and superseded by the acts of 1925 and 1927, except as to railroad-crossings in municipalities, which might be and were intended to be regulated by municipal ordinance.

The instruction by the court, "if you believe that the deceased, Coy Benton, was driving a truck along the public highway parallel to the defendant's tracks, and a short distance in front of defendant's train, and that both the train and the truck were traveling in the same direction, and that the deceased, Coy Benton, when reaching the intersection of Jefferson street in the town of Statham, turned off the highway into this street and drove his truck upon the railroad-crossing in front of the approaching train of the defendant, without exercising ordinary care and diligence for his own

safety, and that was the cause of his death, the plaintiff would. not be entitled to recover," was not error because of the inclusion of the words "without exercising ordinary care and diligence for his own safety." An omission of the language last quoted would have rendered the excerpt quoted an instruction that the acts stated, as a matter of law, amounted to a lack of ordinary care on the part of the decedent, and an invasion of the province of the jury.

■ The written requests to charge as to the general rule governing the degree of care and diligence required to be exercised by the decedent were fully and correctly covered by the charge given on this subject, and the refusal of the requests was not error.

■ The court did not err in refusing the request to charge as follows: "A railway-track is a place of danger and one who goes thereon is bound to know that he is going into a place where he is subject to dangers incident to the operation of trains upon those tracks. This rule applies at a public-road crossing where it crosses the railway-track, and it also applies to crossings within towns and municipalities where streets or highways cross the railway-tracks. It also applies at the depot of the railway company. The law imposes a duty upon every person entering or driving upon a railway-track at a public grade crossing, whether public highway or street across the railway tracks, to exercise ordinary care and diligence for his own safety and protection by using at least his sense of sight, if not hearing, to determine whether or not a train was then approaching the crossing; and if you believe in this case that the deceased, Coy Benton, did not exercise such care and diligence before entering upon this crossing, and you believe that to be the truth of this case, the plaintiff can not recover, and it would be your duty to return a verdict in favor of the defendant and I so direct you." See, in this connection, *Western & Atlantic R. Co.* v. *Jarrett*, 22 *Ga. App.* 313 (4) (96 S. E. 17); *Central of Ga. Ry. Co.* v. *Barnett*, 35 *Ga. App.* 528, 533 (134 S. E. 126); *Savannah Electric Co.* v. *Joseph*, 25 *Ga. App.* 518 (2) (103 S. E. 723).

■ The court did not err in declining to charge the jury, as requested, that if they believed the decedent was traveling along the public highway parallel to the tracks of the defendant company, and in the same direction as the defendant's train was traveling, that the highway extended beyond the crossing, and that the decedent made a perpendicular right turn into the inter-

secting street and into the crossing, without giving any warning or signal of his intention to leave the highway and turn into the crossing, the defendant owed no duty to the decedent to anticipate that he would turn off the highway upon which he was traveling and into the crossing. The request to charge was based upon the ruling by this court in *Georgia, Southwestern & Gulf Ry.* v. *Lasseter,* 39 *Ga. App.* 393 (147 S. E. 166), wherein it was held that a petition was subject to special demurrer upon the ground that the railroad company owed no *special duty* to the deceased, under the circumstances narrated by the petition in that case, to take the precautionary measures which the plaintiff in that case alleged he was entitled to and which the defendant negligently failed to take. As was stated by this court in that case on its second appearance here (41 *Ga. App.* 154, 160, 152 S. E. 267), the fact that the decedent in that case was not entitled to special protection by reason of the fact that he drove an automobile along a road paralleling the defendant's track for some distance before undertaking to pass over the crossing, did not take him without the general class to which the defendant owed the duty of approaching the crossing in question with due care for the safety of any person who might be passing over it at the time. In the instant case the petition was not grounded upon the violation of any special duty alleged to have been owing by the defendant to the decedent, but upon the alleged negligence of the defendant in failing to exercise the degree of care and diligence owing by it to any person who might be on the crossing, or upon the line of the railway at any point within fifty feet of such crossing. See *Georgia Midland R. Co.* v. *Evans,* 87 *Ga.* 673 (3) (13 S. E. 580). Consequently, the charge as requested was inapplicable to the pleadings and the facts of the instant case, was argumentative in its nature, and was properly refused.

■ The fact that one of the jurors who tried the case had, unknown to the defendant or its counsel, served as a traverse juror at the next preceding term of the superior court, while a good ground for challenge, is not ground for a new trial. *Hill* v. *State,* 122 *Ga.* 166 (50 S. E. 57).

■ The court properly admitted in evidence the statement made by the decedent to his brother, who accompanied him on the truck which he was driving, immediately prior to the collision and

just as the automobile-truck proceeded on to the crossing, to the effect that he (the decedent) guessed the train had gone, or that it was due to have gone. This declaration was admissible in explanation of the conduct of the decedent and as a part of the res gestæ. Civil Code (1910), §§ 5763, 5766; *Smith* v. *Bugg*, 35 *Ga. App.* 488, 492 (134 S. E. 116).

■ Before a verdict becomes final it should, where the losing party requires it by a motion for a new trial, receive the approval of the mind and conscience of the trial judge. He is sometimes spoken of as the thirteenth juror. Until his approval is given, the verdict does not become binding, in a case where a motion for a new trial contains the general grounds. *Walters* v. *State*, 6 *Ga. App.* 565, 567 (65 S. E. 357). Accordingly, upon an application for a new trial based in part upon discretionary grounds, it is the mandatory duty of the trial judge to exercise his discretion in passing upon the evidence. *Atlantic Coast Line R. Co.* v. *Williams*, 21 *Ga. App.* 453 (94 S. E. 584). In interpreting the language of an order overruling a motion for a new trial, it must be presumed that the trial judge knew the rule as to the obligation thus devolving upon him, and that in overruling the motion he did exercise this discretion, unless the language of the order indicates to the contrary and that the court agreed to the verdict against his own judgment and against the dictates of his own conscience, merely because he did not feel that he had the duty or authority to override the findings of the jury upon disputed issues of fact. *Martin* v. *Bank of Leesburg*, 137 *Ga.* 285, 290, 291 (73 S. E. 387). The verdict may, however, in and of itself, be highly persuasive upon the judge in arriving at a conclusion in accordance with the dictates of his own mind and conscience. *Walters* v. *State*, supra. This is as much true as is the fact that the opinion of one juror may influence the mind and conscience of another juror in reaching an unanimous conclusion. Accordingly, where the language of the trial judge is susceptible of the interpretation that the verdict was in fact approved by him in the exercise of a sound legal discretion, the fact that the order may indicate that the issues involved were doubtful, and that the verdict may have influenced the judge in reaching the conclusion arrived at by him, would not authorize him to set the verdict and judgment aside as lacking his approval. *Robinson Co.* v. *Rice*, 39 *Ga. App.* 785 (148 S. E.

542). In the instant case the order of the judge overrules the motion and refuses a new trial on all the grounds as amended, which, of course, includes the discretionary grounds. It is nothing unusual for a judge, in passing upon a motion for a new trial, to confine his order to the mere statement that the motion is overruled. In so doing, all the grounds of the motion, including the discretionary grounds, must be taken as having been considered and passed upon. It is not necessary for the judge to go beyond this in the performance of his duty with respect to the motion, and to state specifically that he approves the verdict. The instant case deals with a second verdict in favor of the plaintiff, and a second motion for a new trial. In his order the judge narrates the history of the case. The narrative of the previous history of the case seems to indicate to the writer of this opinion that the judge was satisfied with the verdict in the first instance, and that the only reason he then granted a new trial was on account of an error of law. He now overrules the motion on all the grounds "as amended," with the explanation that no legal question is involved such as requires the grant of a new trial, as he explained was the case in the former instance. We all agree that there is nothing to indicate that the judge was dissatisfied with the verdict on the discretionary grounds, but on the contrary, in overruling the motion and refusing a new trial on all the grounds, his approval is indicated. The fact that he saw proper to narrate the previous history of the case and to differentiate the present motion from the previous motion, which contained valid legal grounds, could not authorize a reversal on the theory that in overruling the motion he did not deal with it in its entirety and upon all its grounds.

Upon a careful review of the voluminous record and the evidence as set forth in the brief of evidence this court can not say, as a matter of law, that the jury were not authorized, in view of all the facts and circumstances disclosed by the record, to find in favor of the plaintiff; and for no reason assigned can the verdict be set aside.

*Judgment affirmed. Stephens and Bell, JJ., concur.*